DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Michael Scheck, appeals from the judgment of the Medina County Court of Common Pleas convicting him of one count of rape, a violation of R.C. 2907.02(A)(2), a felony of the first degree and one count of kidnapping, a violation of R.C.2905.01(A)(1), a felony of the first degree. This Court affirms.
 I. {¶ 2} On July 27, 2004, T.D., a nineteen year-old female, was working at Medina World Cars. T.D. arrived home from work at approximately 5:00 p.m. Once home, she returned an earlier phone call from Appellant, a thirty-nine year-old male who was a close friend of her father. Appellant invited T.D. to stop by his home that evening so that she could drop off an invitation to her impending wedding. T.D. agreed to come over and arrived at Appellant's Medina County home at approximately 7:30 p.m. T.D. brought a twelve-pack of beer along with her. A.J. Samhan, ("Mr. Samhan"), a nineteen year-old male, and a long-time friend of T.D., was present at Appellant's home at the time of her arrival, as were several other men who were performing construction work on the residence.
 {¶ 3} After T.D. gave Appellant her wedding invitation, the two began drinking and talking in private. About an hour after T.D.'s arrival, she and Appellant consumed a few lines of cocaine which Appellant supplied. Appellant then led T.D. to the basement where the two settled on a couch. Shortly thereafter, Mr. Samhan came downstairs. Appellant asked Mr. Samhan to supply him with some cocaine. Mr. Samhan eventually agreed and gave Appellant his cocaine which Appellant shared with T.D. By this time, the parties had consumed several beers. Appellant then offered T.D. more cocaine if she would remove her pants. She claims that she declined this offer while Mr. Samhan asserts that she agreed. T.D. asserts that when she refused his offer, Appellant pushed her onto the couch, digitally violated her and performed oral sex on her, despite her insistence that he stop. T.D. further contends that Mr. Samhan restrained her by holding her arms back and kissing her while Appellant was violating her.
 {¶ 4} Sometime after Appellant violated her, T.D. and Mr. Samhan went upstairs to one of Appellant's children's bedrooms. T.D. recalls waking up in the child's bed with Mr. Samhan but does not recall how she got there. While in the bed, Mr. Samhan had forcible sex with her. Appellant again digitally violated her, performed oral sex on her and repeatedly urged Mr. Samhan to "f *** her." T.D. claims that she again told both men to "stop" and that neither of them complied.
 {¶ 5} T.D. next recalls waking up at 4:00 a.m. next to Mr. Samhan in the child's bed. She recalls that the bed had maroon sheets. She gathered all her clothing, except her underwear which she could not locate, and departed for home. Once home, T.D. showered and sat on her couch crying. She stayed in bed all day on July 28, 2004. T.D. was afraid to tell her fiancé, with whom she lived, about the assault and thus did not tell him at this time.
 {¶ 6} T.D. went to work on July 29, 2004. While at work, she recounted the assault to Rebecca Haller, a co-worker. Ms. Haller testified that T.D. was extremely emotional while telling her about the assault and was shaking and crying "hysterically." Ms. Haller explained that T.D. told her that she had been raped by "Mike" and "A.J." and that she felt disgusting. Later that morning, T.D. and her mother went to the Medina County Sheriff's office where she filed a police report. The Sheriff's office provided T.D. with a recording device for her telephone and instructed her to record any conversations she had with Appellant and/or Mr. Samhan. The officers instructed T.D. to let the men initiate the phone call.
 {¶ 7} An officer then took T.D. and her mother to St. Thomas Hospital in Akron where she was examined and interviewed by forensic nurses. The nurses took numerous photographs of T.D. and recorded her account of the assault. During the interview, T.D. admitted using alcohol and cocaine on the evening in question and stated that she was also taking Zoloft, an anti-depressant. She stated that she blacked out and could not remember portions of the evening. The nurses obtained a urine sample from T.D. which they discarded a few days later at the direction of Detective Kevin Ross of the Medina County Sheriff's Office.
 {¶ 8} On July 29, 2004, Detective Ross and a few other officers executed a search warrant of Appellant's residence. Appellant's wife and Mr. Samhan were present but Appellant was not at home when the police arrived. While the police officers conducted a search of Appellant's residence, Detective Ross interviewed Mr. Samhan. Although Mr. Samhan claimed that he had consensual intercourse with T.D., he acknowledged that Appellant forcefully performed oral sex on T.D. He stated that T.D. told Appellant to "stop." According to Mr. Samhan, he and T.D. had consensual sex three times on the evening of July 27, 2004. Mr. Samhan corroborated T.D.'s assertion that Appellant was urging him to "f *** her" while Mr. Samhan and T.D. were in the child's bedroom.
 {¶ 9} In the officers' search they located three condom wrappers and T.D.'s underwear, which had been stuffed into the pocket of Mr. Samhan's jeans. They also discovered the maroon sheets T.D. mentioned along with a dish towel that had been contaminated with semen. The sheets and dish towel had been washed and dried. When Appellant arrived home, the officers interviewed him.
 {¶ 10} Mr. Samhan called T.D. on July 30, 2004. T.D. recorded the conversation. She then called Appellant but disconnected once she remembered that the police had instructed her to let Appellant place the call. Shortly thereafter, Appellant returned the call and the conversation was recorded. In the conversation, Appellant admitted that he "touched" T.D. but denied committing rape and claimed to have made a videotape that disproved her account of the events. Appellant threatened to show the videotape to T.D.'s father. Throughout this conversation T.D. maintained that she had told Appellant to stop assaulting her. Appellant later admitted that he had lied about the videotape as there was no such tape in existence.
 {¶ 11} On December 10, 2003, the Medina County Grand Jury indicted Appellant on one count of rape, a violation of R.C.2907.02(A)(1)(b), a felony of the first degree and one count of kidnapping, a violation of R.C. 2905.01(A)(1), also a felony of the first degree. Mr. Samhan was also indicted on these charges. The matter proceeded to trial on February 9, 2005. On February 11, 2005, the jury returned guilty verdicts on both the rape and kidnapping charges. The trial court ordered a pre-sentence investigation. Appellant filed a motion for acquittal along with a motion for new trial on February 25, 2005. On March 18, 2005, the trial court heard argument on Appellant's motions for new trial and for acquittal. The trial court overruled both motions. On March 23, 2005, the trial court sentenced Appellant to five years on each count and ordered that the sentences be served concurrently. Appellant appeals from this order, raising six assignments of error. We have rearranged the order of Appellant's assigned errors to facilitate our review.
 II. ASSIGNMENT OF ERROR I
"THE COURT COMMITTED REVERSIBLE ERROR WHEN IT PREVENTED DEFENSE COUNSEL FROM CROSS-EXAMINING THE VICTIM REGARDING PRIOR SEXUAL ACTIVITY WITH THE CO-DEFENDANT."
 {¶ 12} In his first assignment of error, Appellant argues that the trial court committed reversible error when it prohibited the defense from cross-examining T.D. regarding her prior sexual activity with the co-defendant. We disagree.
 {¶ 13} The admission or exclusion of evidence rests soundly within the trial court's discretion. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. The trial court's decision concerning the admission or exclusion of evidence will not be reversed absent an abuse of that discretion. Id. at 182. An abuse of discretion connotes more than an error of law or judgment, but implies that the judgment can be characterized as unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 14} Appellant contends that the application of the rape shield statute to prevent counsel from questioning T.D. regarding her past sexual activity with Mr. Samhan, the co-defendant, violated his right to confrontation and right to due process. However, Appellant did not raise the Confrontation Clause challenge in the trial court. As such, he cannot argue any alleged errors on those grounds for the first time on appeal.State v. Zabrosky (Dec. 7, 1999), 3d Dist. No. 13-99-11, at *2.
 {¶ 15} The rape shield statute provides:
"Evidence of specific instances of the victim's sexual activity * * * shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
R.C. 2907.02(D). The rape shield statute essentially prohibits the introduction in a rape prosecution of any extrinsic evidence pertaining to the victim's prior sexual activity, unless one of the exceptions, such as evidence that is material to the issue of the origin of semen, applies, and unless the balancing test set forth in the statute applies.
 {¶ 16} T.D.'s prior sexual history with the co-defendant,
Mr. Samhan, does not constitute "evidence of the origin of semen, pregnancy or disease, or the victim's past sexual activity with the offender," and, therefore, was properly excluded. [Emphasis added.] Id. See, e.g., State v. Lawhon (June 10, 1998), 5th Dist. No. CT97-023. Accordingly, we overrule Appellant's first assignment of error.
 ASSIGNMENT OF ERROR II
"THE STATE OF OHIO COMMITTED PROSECUTORIAL MIDSCONDUCT [SIC] WHEN IT AUTHORIZED THE DESTRUCTION OF EVIDENCE PRIOR TO TRIAL WHICH WAS CRUCIAL TO [APPELLANT'S] CASE."
 ASSIGNMENT OF ERROR VI
"IT WAS PROSECUTORIAL MISCONDUCT AND REVERSIBLE ERROR FOR [THE STATE] TO REFER TO [APPELLANT] AS A `RAPIST' DURING THE TRIAL."
 {¶ 17} As Appellant's second and sixth assignments of error are interrelated, this Court will address them together. In his second assignment of error, Appellant contends that the State committed prosecutorial misconduct when it authorized the destruction of crucial evidence prior to trial. In Appellant's sixth assignment of error, he contends that the State also committed prosecutorial misconduct when it referred to Appellant as a "rapist" during trial. We find no merit in these contentions.
 {¶ 18} In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, an appellate court determines if the prosecutor's actions were improper, and, if so, whether the substantial rights of the defendant were actually prejudiced. State v. Smith (1984), 14 Ohio St.3d 13, 14. The defendant must show that there is a reasonable probability that, but for the prosecutor's misconduct, the result of the proceeding would have been different. State v. Loza (1994),71 Ohio St.3d 61, 78-79.
 {¶ 19} Appellant has notably failed to identify the portion of the trial wherein the prosecutor referred to him as a "rapist." Nonetheless, a review of the transcript reveals that during closing argument the prosecutor stated:
"You back down from a lie, like he did eight days before his trial. That's what a coward does, that's what a rapist does."
However, Appellant did not object to the prosecutor's alleged misconduct during his closing argument. As such, Appellant has waived a review except under the plain error standard regarding these comments. State v. Slagle (1992), 65 Ohio St.3d 597, 604;State v. Smith, 9th Dist. Nos. 01CA0039 and 01CA0055, 2002-Ohio-4402, at ¶ 103, citing State v. Twyford (2002),94 Ohio St.3d 340. Furthermore, "[i]t is well-established that a prosecutor has wide latitude during closing argument to present his or her most convincing position based on the evidence presented at trial." Smith, supra, at ¶ 103, citing State v.Phillips (1995), 74 Ohio St.3d 72, 90. As Appellant has not asserted that the trial court committed plain error, we decline to address it.
 {¶ 20} In addition, although Appellant elicited testimony regarding the disposal of T.D.'s urine sample, the record reflects that he failed to raise an objection regarding the alleged prosecutorial misconduct. Even had Appellant objected to the disposal of this sample, he has failed to demonstrate that there is a reasonable probability that the outcome of the trial would have been different had he been able to test the urine sample. First and foremost, Appellant has failed to demonstrate that the prosecutor's actions amounted to misconduct. After all, the urine sample was taken forty-eight hours after the assault and thus, as Appellant's expert testified, the sample would not have revealed the amount of alcohol T.D. had consumed. In addition, during both the nurses' examination and at trial, T.D. readily admitted that she had ingested a mixture of cocaine and alcohol on the evening in question. In light of T.D.'s admission that she ingested cocaine and alcohol on July 27, 2004, we find that Appellant has failed to demonstrate (1) the relevance of the sample and (2) that he suffered any prejudice as a result of his inability to analyze the urine sample.
 {¶ 21} Appellant's second and sixth assignments of error are therefore overruled.
 ASSIGNMENT OF ERROR V
"THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT GRANTING [APPELLANT'S] MOTION FOR NEW TRIAL."
 {¶ 22} Appellant asserts in his fifth assignment of error that the trial court erred by not granting his motion for a new trial. Appellant contends that there were two instances of juror misconduct during trial and that this misconduct deprived him of a fair trial. Specifically, Appellant contends that he was prejudiced because (1) one of the jurors commented to another juror regarding the fact that Appellant did not testify and (2) one of the jurors viewed notes that were passed between Appellant and his counsel and then commented to other jurors about the contents. After the trial but prior to sentencing, Appellant moved for a new trial. That motion was denied. Appellant contends that these incidents rise to the level of prejudicial misconduct and that the trial court should have granted his motion for a new trial. We disagree.
 {¶ 23} A trial court's ruling on a motion for a new trial under Crim.R. 33 will be reversed only for an abuse of discretion. State v. Haddix (1994), 93 Ohio App.3d 470, 480. The essential inquiry is whether the substantial rights of the accused are adversely or materially affected. Crim.R. 33(A). A defendant may move for a new trial under Crim.R. 33(A) upon a showing of one of six grounds; one of those bases is juror misconduct. Crim.R. 33(A)(2).
 {¶ 24} At the outset, we note that Appellant's allegations of juror misconduct are not supported by either the trial transcript or the motion hearing transcript. App.R. 16(A)(7) provides that an appellant shall include in its brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Appellant failed to cite to a specific portion of the trial transcript or the motion hearing transcript that demonstrates such juror misconduct, nor can we find such evidence. This court "may disregard an assignment of error presented for review" if the party raising it fails to comply with the above requirements. App.R. 12(A)(2).
 {¶ 25} A review of the transcript from the motion hearing reveals that Appellant relied on a phone conversation between his counsel and a juror to support his contention that the jury relied on Appellant's failure to take the stand. However, the transcript of this phone call reveals no evidence that the juror used Appellant's failure to take the stand against him and/or made any comments about this to any other juror. In addition, Appellant subpoenaed two jurors to testify at the motion hearing. One juror was subpoenaed to testify about the notes that were passed between Appellant and his counsel, while Appellant subpoenaed the other juror to testify regarding her phone conversation with Appellant's trial counsel. The trial court would not permit the jurors to testify. Juror testimony is generally not admissible to impeach a jury verdict unless there is supporting evidence aliunde. Evid.R. 606(B);[1] Statev. Hessler (2000), 90 Ohio St.3d 108, 123. Evidence aliunde is extraneous, independent evidence of alleged conduct based on the firsthand knowledge of one who is not a juror. State v.Schiebel (1990), 55 Ohio St.3d 71, 75.
 {¶ 26} Although the trial court allowed Appellant's trial counsel to testify regarding his investigation of juror misconduct, this testimony is actually inadmissible as it was obtained through the questioning of jurors. In the absence of extraneous, independent evidence supporting the alleged juror misconduct, Appellant's trial counsel was incompetent to testify to the juror's hearsay statements. State v. Flagg (June 18, 1999), 2d Dist. No. 17421, at *3. It is undisputed that Appellant presented no evidence aliunde supporting the juror's proffered testimony. Therefore, the trial court did not abuse its discretion by overruling the motion for a new trial. Appellant's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"THE EVIDENCE PRESENTED AGAINST [APPELLANT] AT TRIAL WAS LEGALLY INSUFFICIENT TO SUSTAIN A CONVICTION."
 ASSIGNMENT OF ERROR IV
"THE CONVICTION OF [APPELLANT] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 27} In his third and fourth assignments of error, Appellant contends that insufficient evidence was produced to sustain his convictions for kidnapping and rape and that his convictions were against the manifest weight of the evidence. This Court disagrees.
 {¶ 28} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Therefore, we will address Appellant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of his claim of insufficiency.
 {¶ 29} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 30} Appellant was convicted of rape, a violation of R.C.2907.02(A)(2), a felony of the first degree and kidnapping, a violation of R.C. 2905.01(A)(4), a felony of the first degree. R.C. 2907.02(A)(2) provides:
"No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
R.C. 2905.01 governs kidnapping and states:
"(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
"* * *
"(4) To engage in sexual activity, as defined in section2901.07 of the Revised Code, with the victim against the victim's will[.]"
Sexual conduct or sexual activity is defined as
"vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between person regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 31} The State presented the testimony of six witnesses. Among those were T.D., Mr. Samhan, Rebecca Haller, the forensic nurses that conducted the July 29, 2004 examination of T.D. and Detective Ross.
 {¶ 32} T.D. testified that, on the night in question, she went to Appellant's home to bring him an invitation to her wedding. Mr. Samhan was at Appellant's residence when T.D. arrived. Once there, Appellant offered her some cocaine. She and Appellant ingested a few lines of cocaine and drank several bottles of beer. Eventually the two went down into the basement. Mr. Samhan joined the two in the basement. Soon thereafter, Appellant offered to give T.D. more cocaine if she would remove her pants. T.D. declined. Appellant then forced her onto a couch in the basement, pulled her pants down and digitally violated her and performed oral sex on her despite her repeated pleas that he "stop." While Appellant was assaulting T.D., she contends that Mr. Samhan restrained her by holding her arms back and kissing her while Appellant was violating her.
 {¶ 33} T.D. testified that she next recalls waking up in Appellant's son's bedroom where Mr. Samhan was engaging in vaginal intercourse with her despite her insistence that he stop and her cries for help. T.D. contends that while Mr. Samhan was assaulting her, Appellant was kneeling beside the bed, encouraging Mr. Samhan. Appellant then pushed Mr. Samhan out of the way and again digitally violated T.D. and again performed oral sex on her despite her insistence that he stop.
 {¶ 34} T.D. also testified that Appellant had made sexual advances towards her on two other occasions. According to T.D., each time this occurred, she told Appellant to "stop" or "no."
 {¶ 35} At trial, the State introduced letters that Mr. Samhan wrote to family while in jail awaiting trial. In these letters and in a recorded conversation with Appellant's wife, Mr. Samhan repeatedly stated that he would tell the truth at trial and would not testify for or against anyone. Mr. Samhan admitted at trial that he forced himself on T.D. and that he knew that he should not have done this. Mr. Samhan also testified that Appellant forcefully performed oral sex on T.D. and that she repeatedly told Appellant to "stop" and said "no" to him. In his interview with Detective Ross, Mr. Samhan corroborated T.D.'s story that, while he was kissing her, Appellant was performing oral sex on her and that she repeatedly told Appellant "no" and "stop." Mr. Samhan's interview was conducted separately from the victim's interview.
 {¶ 36} On cross-examination, Mr. Samhan testified that he was offered a plea bargain wherein his rape charge would be reduced to a sexual battery charge and the State would drop the kidnapping charge if he pled guilty to the sexual battery charge and testified for the State. Mr. Samhan did not receive a promise of any sentence, by either the prosecutor's office, the police or the Court. Before Mr. Samhan testified, the State instructed the jury that Appellant was offered this same plea bargain.
 {¶ 37} Detective Ross testified that Appellant had related four different versions of the events that occurred on July 27, 2004. Most notably, in Appellant's initial interview with Detective Ross, he denied that he had engaged in any sexual activity with the victim on July 27, 2004. However, in a discussion with Detective Ross two months later, Appellant admitted that he had lied about the events that occurred on the night in question and that he had engaged in consensual sexual activity with T.D. on the night in question. He also admitted that, contrary to his statements in the initial interview, he had not videotaped the sexual interactions.
 {¶ 38} Dr. Markowitz testified regarding her July 29, 2004 examination of T.D. According to Dr. Markowitz's report, T.D. felt sore and was so distraught that she had difficulty explaining what had happened to her. Dr. Markowitz explained that the sexual assault examination is very uncomfortable and that those who have made false accusations are generally unwilling to tolerate it.
 {¶ 39} At trial, the jury heard an audio recording of the July 30, 2004 phone conversation between T.D. and Appellant in which Appellant lied about having a videotape of the alleged sexual interactions and acknowledged that he had "touched" her on the night in question. The jury also heard an audio recording of Detective Ross' July 30, 2004 interview with Appellant along with the detective's interview with Appellant wherein he admitted that he had lied in the first interview and claimed that he had engaged in consensual sexual activity with T.D. on July 27, 2004.
 {¶ 40} Dr. Ghoubrial, an internal medicine specialist, testified on behalf of the defense. He opined regarding the effects of Zoloft, cocaine and alcohol on the central nervous system. According to Dr. Ghoubrial, the ingestion of these three substances would not cause a person to black out. Notably, Dr. Ghoubrial had not interviewed T.D. and did not have information regarding the exact amounts of these substances that she had ingested on the evening in question. In addition, Dr. Ghoubrial acknowledged that reactions to these substances vary.
 {¶ 41} After a careful review of the evidence, we cannot say that the jury created a manifest miscarriage of justice when it found Appellant guilty of rape and kidnapping. In the phone conversation between T.D. and Appellant, he admitted that he had "touched" her. Both T.D. and Mr. Samhan testified that Appellant forcefully performed oral sex on T.D. and that she repeatedly told him "no" and to "stop" doing this to her. Appellant introduced five witnesses, however, none of the defense witnesses were present during the alleged assault and could not corroborate Appellant's version of the events. Although Mr. Samhan's testimony raises credibility issues, we are compelled by the similarities between his version of the events and T.D.'s story in light of the fact that the two interviews were conducted separately.
 {¶ 42} The State established the necessary elements of the offenses through the testimony of its six witnesses. We will not disturb the jury's determinations regarding the witnesses' credibility as "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact was in the best position to judge the credibility of the witnesses and found that Appellant committed the charged offenses. Appellant's conviction was not against the manifest weight because the jury chose to believe the testimony of the State's witnesses. Moreover, "in reaching its verdict, the jury is free to believe, all, part, or none of the testimony of each witness." Prince v. Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35, citing State v.Jackson (1993), 86 Ohio App.3d 29, 33.
 {¶ 43} Furthermore, as previously stated, "a determination that [a] conviction is supported by the weight of the evidence [is] also * * * dispositive of the issue of sufficiency."Roberts, supra at *2. Accordingly, having found that Appellant's conviction was not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Appellant's third and fourth assignments of error are overruled.
 III. {¶ 44} Appellant's six assignments of error are overruled, and the judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J., Boyle, concur.
[1] Evid. R. 606(B) provides in pertinent part:
"Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented."