JOURNAL ENTRY and OPINION
{¶ 1} Plaintiffs-appellants, Shirley A. Griffiths and Jack Griffiths, appeal from a common pleas court judgment in favor of defendants-appellees, Airko and All-Nu Awning Co., Inc. ("All-Nu"). Appellants argue that the court erred by granting summary judgment for Airko and by granting partial summary judgment for All-Nu on appellants' claim for spoliation of evidence. They further complain that the court erred by excluding from the trial all testimony about All Nu's destruction of evidence, and by sustaining All-Nu's objections to part of a videotaped deposition. Finally, appellants urge that the jury's verdict in favor of All-Nu contravened the manifest weight of the evidence and that the court erred by denying their motion for a new trial. We find no error in the proceedings below and affirm the trial court's judgment.
 Procedural History {¶ 2} Appellants filed their complaint on April 22, 2002 and amended it with leave of court on April 29, 2003. In the amended complaint, appellants claimed that they retained appellee Airko in March 2000 to repair a metal handrail on the front porch and steps of their home. Airko in turn retained appellee All-Nu to perform the work "as cheaply as possible." On April 7, 2000, All-Nu performed the requested repair and billed Airko $50. Airko in turn billed appellants $75.
 {¶ 3} The amended complaint further alleged that on April 28, 2000, appellant Shirley Griffiths was injured "as the direct and proximate result of the defective condition of the metal hand railing * * * that was negligently, recklessly and/or carelessly repaired * * * by Defendant Airko and Defendant All-Nu * * *." She contacted Airko, who contacted All-Nu, who, on May 3, 2000, came to repair the railing again. Appellants asserted that All-Nu discovered a single snapped bolt, and told Mrs. Griffiths "that the defective condition of the metal hand railing was caused by the old and corroded condition of the snapped bolt," which she saw.
 {¶ 4} Appellants claim that, on May 5, 2000, they gave Airko notice that they intended to pursue a claim for Mrs. Griffiths' damages; on May 9, 2000, they gave a similar notice to All-Nu. In five counts, appellants claimed that Mrs. Griffiths was injured as a result of appellees' negligence and/or intentional misconduct; that All-Nu intentionally disposed of the snapped bolt, disrupting appellants' case; and that appellant Jack Griffiths lost the society and companionship of his wife.
 {¶ 5} Both appellees answered, denying the allegations of the complaint and asserting various affirmative defenses. In addition, Airko asserted a cross-claim against All-Nu.
 {¶ 6} Airko moved the court for summary judgment on October 17, 2003. Its motion alleged that the negligent acts of which appellants complained were undertaken by All-Nu, a subcontractor, and that Airko did not participate in or direct the negligent acts. In support of this motion, Airko submitted an affidavit from Airko's owner, Jim Gilbert, as well as the deposition testimony of appellant Shirley Griffiths; Jerry Leavitt, the person who performed the repair on the railing on April 7, 2000; and Orville Arbogast, the owner of All-Nu. Appellants' brief in opposition relied upon the same evidence. The trial court granted Airko's motion on July 20, 2004, holding that:
 {¶ 7} "* * * Defendant Airko is not the proximate cause of plaintiff's injury because defendant Airko did not perform any repair work on the railing which allegedly gave way and caused plaintiff's injury. Any negligence would be imputed directly to defendant All-Nu, who, in fact, did the repairs. See deposition of Jerry Leavitt, employee of All-Nu who fixed the railing who testified that defendant Airko had nothing to do with the repair.
 {¶ 8} "Defendant Airko is not vicariously liable for the acts of Leavitt or All-Nu. The general rule is that an employer is not liable for the negligence of an independent contractor. * * * *"
 {¶ 9} All-Nu also moved the court for partial summary judgment on the issues of spoliation and punitive damages. In support of this motion, All-Nu attached the affidavit of its owner, Orville Arbogast, who stated that he had had possession of a part of the bolt which allegedly broke and caused appellants' injuries, but that the bolt was accidentally discarded when he traded-in the vehicle in which it was stored. Appellants responded, relying upon Arbogast's deposition testimony as well as the deposition testimony of Katherine Spicker, an employee of All-Nu, Jerry Leavitt, Shirley Griffiths, and Jim Gilbert. The court granted All-Nu's motion in an order providing as follows:
 {¶ 10} "* * * Viewing the evidence as most favorable to the plaintiff, this court finds that the plaintiff has failed to establish that defendant All[-]Nu willfully destroyed the bolt at issue in this case. Smith v. Johnson Co., Inc. (1993),67 Ohio St.3d 28. In a spoliation case, `willfull' [sic] reflects an intentional and wrongful commission of the act. Drawl v. Cornicelli (1997), 124 Ohio Ap.3d [sic] 562.
 {¶ 11} "In the instant case, plaintiff's evidence that the bolt may have been emptied from the truck into the dumpster after the repair was done (Katherine Spicker's deposition at page 29), or that the bolt was accidentally discarded when defendant's owner Orville Arbogart [sic] traded in his vehicle in which the bolt was stored (p[.] 4 Affidavit of Arbogast), does not meet the standard of a premeditated malicious act as set forth in Drawl. Id."
 {¶ 12} The remaining claims against All-Nu proceeded to trial on July 6, 2005. At the conclusion of the trial, the jury returned a verdict for All-Nu on all of appellant's claims. In response to interrogatories, the jury determined that All-Nu was not negligent. Appellants moved the court for a new trial on the ground that the verdict was against the weight of the evidence. The court denied this motion. Appellants now appeal these decisions.
 Facts {¶ 13} The jury's determination that All-Nu was not negligent significantly limits the facts relevant to our review. The parties agree that appellants called Airko in March 2000 to repair the handrail on the steps at the front of their home. Airko called All-Nu to do the work. All-Nu's employee, Jerry Leavitt, went to appellant's home to repair the rail on April 7, 2000. On April 28, 2000, Mrs. Griffiths lost her balance and fell down the stairs. She grabbed at the rail, but it gave way when a bolt snapped. She suffered physical injuries as a result of her fall.
 {¶ 14} Appellants called Airko again about the broken handrail, and Airko again called All-Nu. All-Nu's owner, Orville Arbogast, went to appellants' home to repair the rail again. He discovered a broken bolt, which he replaced.
 {¶ 15} The issue whether All-Nu was negligent turns on the factual question whether Leavitt used new bolts to make the repair to the rail, or whether he reinstalled old bolts. All-Nu's own witnesses testified that bolts installed in concrete are weakened because concrete corrodes them. The evidence as to whether Leavitt used old or new bolts is discussed below.
 Law and Analysis {¶ 16} Appellants' first two assignments of error challenge the common pleas court's rulings on appellees' summary judgment motions. We review the common pleas court's rulings on summary judgment de novo, applying the same standard the common pleas court applied. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102,1996-Ohio-336. "[S]ummary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. MentorSoccer Club, 82 Ohio St.3d 367, 369, 1998-Ohio-389.
 {¶ 17} In their first assignment of error, appellants complain that the court erred by granting summary judgment for Airko. They argue that there were genuine issues of material fact whether Airko was liable for All-Nu's negligence under the doctrine of respondeat superior or under an implied warranty theory.
 {¶ 18} The doctrine of respondeat superior applies only in the context of employment (or agency) relationships, making an employer liable for the negligent acts of its employees within the scope of their employment. See, e.g., Strock v. Pressnell
(1988), 38 Ohio St.3d 207, 217; Kosoglov v. Hildebrand (April 23, 1981), Cuyahoga App. No. 43017. Respondeat superior liability arises from the employer's ability to control the manner or means by which the employees perform their work. Councell v. Douglas
(1955), 163 Ohio St. 292, 296. Consequently, the doctrine is inapplicable to the relationship of employer/independent contractor. Id. at 295. Employer/employee relationships are distinguished from employer/independent contractor relationships by considering whether the employer has the ability to control the manner and means by which the work is performed (establishing an employment relationship), or whether the employer is only interested in the ultimate result to be accomplished, not how that result is obtained (establishing an independent contractor relationship). Miller v. Metropolitan Life Ins. Co. (1938),134 Ohio St. 289, 291.
 {¶ 19} Appellants contend that Leavitt's testimony that Airko instructed him to make the repairs at appellant's residence "as cheaply as possible" created a genuine issue of material fact whether All-Nu was an employee of Airko rather than an independent contractor. We disagree. This instruction did not assert control over the manner or means by which All-Nu was to perform the work. To the contrary, Airko's instruction expressed no concern about how All-Nu did the work as long as it was done inexpensively.
 {¶ 20} Appellants also contend that Airko may be liable for their injuries under the theory of breach of implied warranty, citing SD Mechanical Contrs. v. Enting Water Conditioning Sys.
(1991), 71 Ohio App.3d 228. The court in SD drew a distinction between contractual design specifications and performance specifications:
 {¶ 21} "If a specification provides explicit instructions which tell the contractor exactly how the contract is to be performed and no deviation from the instructions is permissible, then the specification is design in nature. * * * If, on the other hand, the specification seeks an end result and leaves the determination as to how the result is to be obtained to the contractor, then the specification is performance in nature. * * * If a contract contains a design specification, responsibility for deficiencies rests with the party who prepared the specification because that party impliedly warrants that the specification is adequate to produce the result. * * * If the contract calls for a performance specification, which only indicates the desired end result, then responsibility for deficiencies lies with the contractor who designs the mechanism by which the result is to be achieved because the contractor then impliedly warrants his design's sufficiency." SD,71 Ohio App.3d at 233 (citations omitted).
 {¶ 22} We cannot agree with appellants that Airko's instruction to perform the repairs "as cheaply as possible" constituted a design specification. Airko specified a desired result (an inexpensive repair), not a specific method for performing the work.
 {¶ 23} There was no evidence that Airko controlled the manner or means by which All-Nu performed the repair work or specifically instructed All-Nu about how to make the repairs, so Airko could not have been liable for All-Nu's work under the doctrine of respondeat superior or breach of implied warranty. The trial court therefore correctly determined that Airko was entitled to judgment as a matter of law. We overrule the first assignment of error.
 {¶ 24} Second, appellants argue that the court erred by granting partial summary judgment for All-Nu on appellants' claim for spoliation of evidence. "[T]he elements of a claim for interference with or destruction of evidence are (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." Smithv. Howard Johnson Co., 67 Ohio St.3d 28, 29, 1993-Ohio-229.
 {¶ 25} Viewed in the light most favorable to appellants, the evidence in this case showed that the broken bolt was either (a) disposed of immediately after Arbogast repaired the railing after Ms. Griffiths' fall or (b) inadvertently left in Arbogast's truck when he traded it for another vehicle. There is no evidence that litigation was probable at the time Arbogast repaired the railing, or that Arbogast knew litigation was probable, nor is there any indication that, if Arbogast did dispose of the bolt at that time, he did so for the purpose of disrupting appellants' case. The affidavit stating that Arbogast left the broken bolt in his truck when he traded it in does not disclose when the trade-in occurred, so we cannot say whether litigation was pending or probable at that time. In any case, however, there is no evidence that Arbogast intentionally left the bolt in the truck to disrupt appellants' case. Therefore, All-Nu was entitled to judgment as a matter of law of appellants' claim for spoliation.
 {¶ 26} Third, appellants contend that the court erred by excluding from trial any evidence of All-Nu's destruction of the bolt. The admission or exclusion of evidence rests in the sound discretion of the trial court. The trial court's decision will not be disturbed unless the court abused its discretion and the complaining party was materially prejudiced by the decision.Columbus v. Taylor (1988), 39 Ohio St.3d 162, 164-65. Appellants urge that the destruction of the bolt was "relevant to the issues of Appellee All-Nu's liability and the credibility of Appellee All-Nu's witnesses." The fact that the bolt was destroyed or lost does not provide any information about the condition of the bolt when Leavitt installed it, nor does it make any other fact relevant to appellant's claim more or less likely. Therefore, appellants have not shown that the destruction of the bolt was relevant to their claims. A trial court does not abuse its discretion by excluding irrelevant evidence. The third assignment of error is overruled.
 {¶ 27} Fourth, appellants assert that the court erred by excluding James Gilbert's videotaped testimony that he occasionally reused existing fasteners on a job. The trial court's rulings on the objections to Gilbert's videotaped testimony are not included in the record. Appellants have not demonstrated on the record that the court even made this ruling, so we cannot consider whether the alleged ruling was erroneous. See App.R. 12(A)(2); State v. Scheck, Medina App. No. 05CA0033-M, 2006-Ohio-647, ¶ 24. Accordingly, we overrule the fourth assignment of error.
 {¶ 28} Appellants argue their fifth and sixth assignments of error together. See App.R. 12(A)(2) (appellate court may disregard an assignment of error not separately argued). Appellants' fifth assignment of error contends that the jury's verdict contravened the manifest weight of the evidence; the sixth assignment of error claims that the court erred by denying appellants' motion for a new trial on the ground that the judgment was not sustained by the weight of the evidence.
 {¶ 29} "Civ.R. 59(A)(6) provides that a trial court may order a new trial if it is apparent that the verdict is not sustained by the manifest weight of the evidence. A reviewing court may reverse the trial court's order if the trial court abused its discretion in failing to order a new trial. Antal v. Olde WorldeProducts (1984), 9 Ohio St.3d 144, 145. The high abuse of discretion standard defers to the trial court order because the trial court's ruling may require an evaluation of witness credibility which is not apparent from the trial transcript and record. Schlundt v. Wank (Apr. 17, 1997), Cuyahoga App. No. 70978. Therefore, as long as the evidence [sic] is supported by substantial competent, credible evidence, the jury verdict is presumed to be correct and the trial court must refrain from granting a new trial. Id." Bach v. DiCenzo, Cuyahoga App. No. 84396, 2005-Ohio-2611, ¶ 40.
 {¶ 30} As appellants pointed out in their motion for a new trial, the parties proffered contradictory evidence at trial: Leavitt testified that he used new bolts to perform the repair and that he always did so because the old bolts "would probably be bent from them being in concrete, the heads might be chewed up. Besides, they don't look good." All-Nu's owner, Orville Arbogast, likewise testified that he never reused old fasteners because "[b]olts are so cheap, why would you reuse something rusty and old?" Photographs of the house taken by Mr. Griffiths a few days after Arbogast's repair appear to show new bolts in the footers on the repaired side and rusty bolts on the footers on the other side.
 {¶ 31} Appellant Shirley Griffiths testified that Leavitt removed the entire railing assembly, including the post attached to the house, when he repaired it. She further testified that the post which attached the railing to the house on the side that was repaired was held in place with one newer bolt and one rusty one. Presumably, the purpose of this testimony was to create an inference that Leavitt used some old bolts for the repair. However, Mr. Griffiths testified that Leavitt did not remove the part of the railing assembly which was attached to the house when he made the repair. Consequently, appellants' own evidence created a question whether this was a fair inference. Leavitt also testified that he did not remove this part of the assembly in making the repair.
 {¶ 32} Mrs. Griffiths also testified that, while Arbogast was repairing the safety railing after her fall, he showed her two pieces of a corroded old bolt which had snapped. Arbogast did not remember telling her that the bolt snapped. He testified that he had only one piece of a bolt, and that the other piece remained embedded in the concrete. He took this piece with him and showed it to Leavitt and Spicker. Both Spicker and Leavitt testified that the piece of bolt Arbogast showed them was new.
 {¶ 33} Some competent credible evidence supported the jury's determination that All-Nu was not negligent. There was ample credible evidence that All-Nu used new bolts for the repair. Therefore, we will not reverse the judgment as being against the manifest weight of the evidence, nor did the trial judge abuse his discretion by denying appellants' motion for a new trial on this basis.
Affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J. and Kilbane, J. concur.