[Cite as *State v. Birch*, 2020-Ohio-90.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

    Appellee

v.

MICHAEL BIRCH

    Appellant

C.A. Nos.    29313
                   29322
                   29323

APPEAL FROM JUDGMENT
ENTERED IN THE
BARBERTON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE Nos.    18CRB1067
                   18CRB2201

DECISION AND JOURNAL ENTRY

Dated: January 15, 2020

---

TEODOSIO, Presiding Judge.

{¶1}   Defendant-Appellant, Michael Birch, appeals from his convictions in the Barberton Municipal Court. This Court affirms.

I.

{¶2}   Mr. Birch and his ex-wife have one son and had a contentious divorce. Early on in their divorce proceedings, Mr. Birch's aunt acted as an intermediary and helped facilitate their custody exchanges. Mr. Birch soon became frustrated with her and the proceedings, however, and routinely called her to vent his frustrations. Due to the escalating frequency and nature of his calls, the aunt eventually told him to stop calling and contacted the police, who likewise told him to stop calling. The calls then ceased for a few months before resuming. Though the aunt would not answer Mr. Birch's calls, he left her voicemail messages on a regular basis. After compiling forty recorded messages, the aunt decided to press charges. Her complaint led to Mr.

Birch being charged with one count of telecommunications harassment, in violation of R.C. 2917.21(A)(5).

{¶3} Apart from the calls he made to his aunt, Mr. Birch also habitually contacted his ex-wife. The two had a court-ordered messaging application installed on their cell phones to communicate about their son, but Mr. Birch routinely contacted her in other ways as well. Specifically, he would call her, text message her directly (i.e., through her cell phone provider), and message her through another texting application. Because Mr. Birch continued to do so even after she told him not to contact her through any means other than their court-ordered messaging application, the ex-wife contacted the police to press charges. Her complaint also led to Mr. Birch being charged with one count of telecommunications harassment, in violation of R.C. 2917.21(A)(5).

{¶4} The trial court consolidated Mr. Birch's two charges for purposes of trial. A jury found him guilty on both counts, and the court sentenced him to a fine and a period of court-ordered supervision on each count. Mr. Birch then moved for a stay of execution, and the court agreed to stay certain aspects of his sentence for purposes of his appeal.

{¶5} Mr. Birch filed three appeals; one from each of the court's judgment entries and one that addressed both judgment entries. Upon review, this Court consolidated the three appeals for purposes of briefing, argument, and decision. Mr. Birch raises four assignments of error for our review.

II.

**ASSIGNMENT OF ERROR ONE**

THE TRIAL COURT ERRED BY FAILING TO GRANT MR. BIRCH'S [CRIM.] R. 29 MOTION FOR ACQUITTAL.

**ASSIGNMENT OF ERROR TWO**

THE JURY'S VERDICT WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF MR. BIRCH'S CONSTITUTIONAL RIGHTS.

{¶6}   In his first assignment of error, Mr. Birch argues that the court erred when it denied his motion for acquittal.  In his second assignment of error, he argues that the jury's verdicts are based on insufficient evidence.  Because the same analysis can be used to resolve both assignments of error, we consolidate them to aid our discussion.  For the following reasons, we reject Mr. Birch's arguments.

{¶7}   "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence."  *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33.  Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo.  *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997).  "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury."  *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386.  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact."  *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶8}   A person shall not make a telecommunication if he "[k]nowingly makes the telecommunication to [a] recipient * * * or to [the recipient's] premises, and the recipient or another person at those premises previously has told [him] not to make a telecommunication to those premises or to any persons at those premises * * *."  R.C. 2917.21(A)(5).  "A person acts

knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). Whoever commits the foregoing offense is guilty of telecommunications harassment. R.C. 2917.21(C)(1).

Mr. Birch's Aunt

{¶9} Mr. Birch's aunt testified that she first contacted the police about Mr. Birch in April 2017 because she was receiving "obsessive phone calls[ and] text messages from [him] concerning his divorce * * *." She described the calls as angry and accusatory in nature and testified that she made Mr. Birch aware the calls were unwelcome. Specifically, she first told Mr. Birch to stop harassing her or contacting her about his divorce and later told him not to call her at all. The aunt went to the police at least twice before pressing charges and, after the police spoke with Mr. Birch, the harassing phone calls stopped for a few months. The calls then resumed, however, and became "more and more threatening." Though the aunt blocked Mr. Birch's number on her home and cell phones, she testified that his calls would still be routed to voicemail and he would routinely leave her harassing messages. The State introduced, through her testimony, the recordings of 40 voicemail messages she received from him between November 2017 and April 2018.

{¶10} The aunt admitted that she intentionally spoke with Mr. Birch several times after instructing him not to call her. Specifically, she spoke with him when her husband fell ill and spoke with him at the funeral. The aunt could not recall if, following her husband's death, she reiterated to Mr. Birch that he was still not to call her. She did testify, however, that she would not answer when he called. She also testified that she believed she made clear the fact that she

did not wish to receive any type of communication from him in the form of harassment. When Mr. Birch persisted in leaving her harassing messages, she decided to press charges.

{¶11} Detective Michael Yovanno took the aunt's report when she came to the police station in April 2018 to press charges. He testified that a prior police report, as well as an addendum to that report, had been completed in April 2017 and August 2017 when the aunt contacted the police about Mr. Birch's calls. Although the aunt had not wanted to press charges at the time of the earlier reports, Detective Yovanno noted that an officer had spoken with Mr. Birch about his phone calls. As a result of that conversation, "Mr. Birch [had] agreed not to have any further contact with [his aunt]."

{¶12} Mr. Birch acknowledges that some of the phone calls he made to his aunt could be considered harassing, intimidating, or abusive. Yet, he notes that he was not charged with purposely or knowingly making threatening, harassing, or abusive telecommunications. *See* R.C. 2917.21(A)(1), (6). Because he was only charged with violating R.C. 2917.21(A)(5), Mr. Birch argues, the State was required to prove that he knowingly called or messaged his aunt at her residence after she or another person at her residence told him not to do so. Further, it had to prove that he did so "on or about the 18th day of April, 2018 * * *" (i.e., the date set forth in his criminal complaint). Mr. Birch argues that there was "no clear proof" his aunt or someone at her residence told him not to call there. He also argues that there was no evidence he called her residence on or about April 18th.

{¶13} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved each of the elements of Mr. Birch's conviction beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. The aunt testified that she told Mr. Birch to stop harassing her, eventually told him not to call her at

all, and had the police speak with him about his persistent calls. Although unforeseen circumstances later caused her to speak with him a few times, she never testified that she once again began accepting his calls. In fact, she testified that she blocked his number and never answered his calls. Based on the aunt's earlier representations to Mr. Birch, her decision to involve the police, and her conduct in not answering or returning any of his calls, the jury reasonably could have concluded that Mr. Birch knew not to call his aunt because she had instructed him not to do so. *See* R.C. 2917.21(A)(5); *State v. Disabato*, 3d Dist. Union No. 14-18-23, 2019-Ohio-3542, ¶ 22.

{¶14} The jury also reasonably could have concluded that Mr. Birch called his aunt at least once on or about April 18, 2018. The aunt provided the police with 40 voicemail recordings that she received from Mr. Birch. Detective Yovanno testified that those recordings spanned from "November of [2017] through * * * [the] middle of April 2018." Moreover, the aunt testified that she went to the police station to file her police report in April 2018 because Mr. Birch persisted in calling her. Her testimony, in conjunction with the evidence that Mr. Birch left her at least one voicemail in "[the] middle of April 2018," constituted evidence that he contacted her around the date alleged in his criminal complaint. *See State v. Forney*, 9th Dist. Summit No. 24361, 2009-Ohio-2999, ¶ 10 ("The State is only required to prove that [an] offense occurred reasonably near the date specified in the [charging instrument]."). Thus, Mr. Birch has not shown that his conviction is based on insufficient evidence.

Mr. Birch's Ex-Wife

{¶15} The ex-wife testified that she and Mr. Birch shared one son and had a custody/visitation agreement that became effective in April 2018. Apart from setting forth Mr. Birch's visitation schedule, the agreement provided that the parties were to communicate only by

means of a court-ordered messaging application and only about their son. Nevertheless, the ex-wife testified that Mr. Birch routinely called her and sent her text messages through her provider and another messaging application. She described the calls and messages as emotionally abusive, as well as "a complete nuisance." She testified that she repeatedly told Mr. Birch to stop text messaging her and threatened to contact the police, but Mr. Birch "pretty much laughed at [her]." According to the ex-wife, Mr. Birch would essentially "lock[] up [her] phone" by sending her so many text messages and voicemail messages that she would have to turn it off. She testified that she ultimately pressed charges against him because she needed to move forward and he would not stop contacting her in the foregoing manner.

{¶16} Mr. Birch argues that his conviction is based on insufficient evidence because the State failed to prove that he was only to contact his ex-wife by means of a court-ordered messaging application. He notes that the State never produced a copy of his divorce decree. According to Mr. Birch, if he violated the decree, that was a matter best handled by the domestic relations court. Because he was not charged with making threatening, offensive, or abusive telecommunications, Mr. Birch argues, the State's evidence against him was inapposite and not proof that he violated R.C. 2917.21(A)(5).

{¶17} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved each of the elements of Mr. Birch's conviction beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. The State was not required to prove that Mr. Birch violated the terms of his divorce decree and/or custody agreement. To secure his conviction, it only needed to prove that he knowingly sent his ex-wife a telecommunication after she told him not to do so. R.C. 2917.21(A)(5). The ex-wife specifically testified that she repeatedly told Mr. Birch not to send her text messages, but he

"pretty much laughed at [her]" and continued to do so. She described the messages as "a complete nuisance" and indicated that he would contact her so often that she would be forced to turn off her phone. Thus, there was evidence in the record to support Mr. Birch's conviction. *See State v. Butler*, 9th Dist. Summit No. 11921, 1985 WL 10866, *2 (Sept. 25, 1985). Because Mr. Birch has not shown that either of his convictions are based on insufficient evidence, his first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR THREE

THE COURT ERRED IN ALLOWING, EVIDENCE THAT WAS NOT RELEVANT, AND MISLEADING, CONFUSING AND HIGHLY PREJUDICIAL.

{¶18} In his third assignment of error, Mr. Birch argues that the trial court abused its discretion when it admitted highly prejudicial and irrelevant evidence at trial. Specifically, he argues that the court erred when it admitted other acts evidence in the form of (1) voicemails he left for his aunt, and (2) testimony about welfare checks he requested for his son. Upon review, we reject his arguments.

{¶19} This Court has consistently held that "'[t]he admission or exclusion of evidence rests soundly within the trial court's discretion.'" *State v. Powell*, 9th Dist. Lorain No. 12CA010284, 2017-Ohio-4030, ¶ 16, quoting *State v. Scheck*, 9th Dist. Medina No. 05CA0033-M, 2006-Ohio-647, ¶ 13. We therefore review a trial court's decision regarding the admission or exclusion of evidence for an abuse of discretion. *Id.* An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

Voicemail Recordings

**{¶20}** As noted, the State introduced through Mr. Birch's aunt the recordings of 40 voicemail messages he left for her between November 2017 and April 2018. Mr. Birch argues that there was no reason for the jury to hear the substance of those calls, as he was not charged with making threatening, harassing, or abusive telecommunications. *See* R.C. 2917.21(A)(1), (6). He also argues that most of the calls were irrelevant because he was charged with one count of telecommunications harassment and most of the calls preceded the date of his alleged offense. According to Mr. Birch, the calls only served to prove that he had a propensity for abusive or harassing behavior. He, therefore, argues that the court ought to have excluded them as both irrelevant and substantially more prejudicial than probative.

**{¶21}** Assuming without deciding that the trial court erred when it admitted the foregoing evidence, this Court concludes that its error did not affect Mr. Birch's substantial rights. *See* Crim.R. 52(A) (stating "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded"). As noted, Mr. Birch's convictions only required the State to prove that he knowingly contacted his aunt and his ex-wife after they told him not to do so. *See* R.C. 2917.21(A)(5). *See also Butler*, 1985 WL 10866, at *2. The State presented ample testimonial evidence to that effect, and Mr. Birch has not shown that, but for the court's decision to allow the State to play the voicemail recordings, the jury would not have convicted him. *See* Crim.R. 52(A). Because the court's error, if any, was harmless, we reject Mr. Birch's argument to the contrary.

Testimony Regarding Welfare Checks

**{¶22}** Apart from testifying about Mr. Birch's messages, Mr. Birch's ex-wife testified that Mr. Birch habitually contacted the police and asked them to come to her house to conduct

welfare checks on their son. She described the welfare checks as another form of harassment and claimed that Mr. Birch would request one when he did not "get what he want[ed] or [did not] get the response from [her] that he wanted * * *." In addition to her testimony about the welfare checks, the State presented the testimony of Officer Daniel See. Officer See confirmed that he had been out to the ex-wife's house four or five times because Mr. Birch had requested welfare checks. He testified that the checks never resulted in a cause for concern.

{¶23} Mr. Birch argues that the court erred by admitting testimony about the welfare checks because it was irrelevant, misleading, and prejudicial. Yet, the record reflects that he failed to object to any of the testimony regarding the welfare checks. Because Mr. Birch failed to object to the foregoing testimony, he has forfeited his objection for purposes of his appeal. *See State v. Chapman*, 9th Dist. Lorain No. 18CA011377, 2019-Ohio-3535, ¶ 14. And while that forfeiture would not preclude him from raising a claim of plain error, he has not done so. "This Court, therefore, rejects his argument on the basis that he has not preserved it for appeal." *Id.*, citing *State v. Stevens*, 9th Dist. Medina Nos. 16CA0033-M & 16CA0034-M, 2017-Ohio-5482, ¶ 21 ("When an appellant does not develop a plain error argument in his brief, this Court will not create one on his behalf."). Mr. Birch's third assignment of error is overruled.

**ASSIGNMENT OF ERROR FOUR**

THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶24} In his fourth assignment of error, Mr. Birch argues that his convictions are against the manifest weight of the evidence. He argues that the jury lost its way when it convicted him because the State's witnesses were either biased against him or unreliable and other evidence, which the court should have excluded, unfairly cast him in a negative light. Upon review, we reject his argument.

**{¶25}** This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

**{¶26}** Mr. Birch did not testify in his own defense, but instead relied upon cross-examination. He argues that the jury lost its way in convicting him because his ex-wife was clearly biased against him and "[h]er hostility made her an unreliable witness." As for his aunt, Mr. Birch argues that she too was unreliable because she contradicted herself when testifying. Mr. Birch claims that the jury was clearly led astray by irrelevant, prejudicial evidence and lost its way when it chose to believe the State's witnesses.

**{¶27}** Having reviewed the record, we cannot conclude that the jury clearly lost its way when it convicted Mr. Birch. *See Otten*, 33 Ohio App.3d at 340. Both Mr. Birch's aunt and his ex-wife testified that Mr. Birch contacted them after they instructed him not to do so. Although his aunt could not recall exactly what she told Mr. Birch or if she reiterated her instructions after her husband died, she testified that she believed she had made clear the fact that she did not wish to receive harassing phone calls from him. She also never answered his calls, blocked his

number, and went to the police about the calls at least twice before pressing charges against him. To the extent Mr. Birch claims that either she or his ex-wife were unreliable witnesses or that his wife was biased against him, the jury was in the best position to evaluate their credibility and was "'free to believe all, part, or none of the testimony of each witness.'" *State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. A verdict is not against the manifest weight of the evidence simply "because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Upon review, Mr. Birch has not shown that this is the exceptional case where the evidence weighs heavily against his convictions. *See Otten*, 33 Ohio App.3d at 340. As such, his fourth assignment of error is overruled.

III.

{¶28} Mr. Birch's assignments of error are overruled. The judgment of the Barberton Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
THOMAS A. TEODOSIO
FOR THE COURT


CARR, J.
HENSAL, J.
CONCUR.


APPEARANCES:

DAVID M. LENEGHAN and K. SCOTT CARTER, Attorneys at Law, for Appellant.

MICHELLE BANBURY, Assistant Prosecuting Attorney, for Appellee.