[Cite as *State v. Clark*, 2015-Ohio-2978.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 14AP0002 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARK CLARK | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. CRB-13-07-01183 |

DECISION AND JOURNAL ENTRY

Dated: July 27, 2015

MOORE, Judge.

{¶1} Defendant, Mark Clark, appeals from the judgment of the Wayne County Municipal Court. We affirm.

I.

{¶2} In July of 2013, Officer Christopher Grabowski of the City of Wooster Police Department responded to Freedlander Park in Wooster, Ohio, where Mr. Clark was reported to have engaged in a physical altercation with his fifteen-year-old daughter, A.C. Officer Grabowski spoke to A.C. and witnesses, and the officer noted a red mark on A.C.'s chest that was consistent with being struck. As a result of the witnesses' statements and the mark on A.C.'s chest, Mr. Clark was charged with domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

**{¶3}** Mr. Clark pleaded not guilty to the charge, and the case proceeded to a jury trial. The jury found Mr. Clark guilty, and the trial court imposed sentence in an entry dated January 14, 2014. Mr. Clark timely appealed from the sentencing entry, and he now raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE JURY'S FINDING OF GUILT WAS NOT SUPPORTED BY
SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE.

**{¶4}** In his sole assignment of error, Mr. Clark argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

**{¶5}** Initially, we note that R.C. 2919.25(A) does not prevent "a parent from properly disciplining his or her child." *State v. Suchomski*, 58 Ohio St.3d 74, 75 (1991). There is a split of authority pertaining to whether the State must disprove proper parental discipline as an element of domestic violence, or whether the exercise of proper parental discipline is an affirmative defense to domestic violence. *See State v. Rosa*, 7th Dist. Mahoning No. 12 MA 60, 2013-Ohio-5867, ¶ 26, fns.1 and 2 (identifying the First, Fourth, Sixth, and Eighth Districts as treating parental discipline as an element of the offense, and the Second, Third, Fifth, Tenth, Eleventh, and Twelfth Districts as treating parental discipline as an affirmative defense). If it is an element of the offense, on which the State bears the burden of proof, then it is properly reviewed in a challenge to the sufficiency of the evidence, but if it is an affirmative defense, on which the defendant bears the burden of proof, it is not properly reviewed in the context of the sufficiency of the evidence. *See* R.C. 2901.05(A) (prosecution bears the burden of proof, beyond

a reasonable doubt, for all elements of the offense, and defendant bears the burden of proof, by a preponderance of the evidence, for an affirmative defense) and *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37 (affirmative defenses are not properly argued in a challenge to the sufficiency of the evidence).

{¶6} Although this Court has addressed the issue of parental discipline in the context of domestic violence and assault, it does not appear that we have been squarely presented with an argument on the issue of the burden of proof. *State v. Barker*, 9th Dist. Lorain No. 04CA008439, 2004-Ohio-4329, ¶ 18 (noting that the jury was instructed as to the "affirmative defense of corporal punishment"); *see also Lorain v. Prudoff*, 9th Dist. Lorain No. 93CA005684, 1994 WL 709667, *3-*4 (Dec. 21, 1994) (noting in analysis of the sufficiency of the evidence that, assuming nonparent defendant was permitted to use proper and reasonable discipline on the victim, the testimony at trial was sufficient to demonstrate that defendant exceeded proper and reasonable parental discipline.)

{¶7} Here, the parties and the trial court treated reasonable and proper parental discipline as an affirmative defense to the domestic violence charge, and the jury was instructed accordingly. On appeal, because Mr. Clark has not challenged the determination that reasonable and proper parental discipline is an affirmative defense, we decline to pass upon it. *See In re Hiltabidel*, 9th Dist. Summit No. 21009, 2002-Ohio-3627, ¶ 58 ("An appellant bears the burden of affirmatively demonstrating error on appeal"). Instead, we will confine our discussion of parental discipline to our analysis of the manifest weight of the evidence, where we will address it as an affirmative defense as the trial court did without challenge below or on appeal.

Sufficiency of the Evidence

{¶8} The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. *Id.* at 390 (Cook, J. concurring). In making this determination, an appellate court must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶9} As part of the State's case-in-chief, it presented the testimony of A.C. A.C. maintained that she was, at the time of hearing, fifteen years old. She explained that, on the date at issue, she was living with her grandmother, and Mr. Clark came to pick her up with her two brothers. She got into Mr. Clark's car, and they drove around before heading to Freedlander's pool. In the car, A.C. and Mr. Clark were arguing about A.C.'s living arrangements, because A.C. did not want to live with Mr. Clark and his girlfriend. When they got to the park, Mr. Clark parked the car, and told A.C.'s two brothers to get out of the car and walk around. While he and A.C. were still in the car, Mr. Clark smacked her with the back of his hand on her chest, and that scared her because he had never hit her like that before. She got out of the car and ran up a hill, until she had to stop because she was out of breath. Mr. Clark then came up behind A.C. and grabbed her hair. A.C. described the harshness of the hair pull as a ten on a scale of one to ten. She explained that she had never been hurt like that before, and it felt like someone was ripping

out her hair. He then started pulling her, and A.C. was screaming for help. One of her brothers then told Mr. Clark to let go, which he did, and A.C. left with some lifeguards that had come to help her.

{¶10} A.C.'s testimony, when viewed in the light most favorable to the State, was sufficient evidence to establish that Mr. Clark caused or attempted to cause physical harm to a family or household member. Accordingly, to the extent that Mr. Clark challenges the sufficiency of the evidence, his assignment of error is overruled.

Manifest Weight of the Evidence

{¶11} Mr. Clark further maintains that his conviction was against the weight of the evidence. When a defendant asserts that his conviction is against the manifest weight of the evidence:

> [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). In making this determination, this Court is mindful that "[e]valuating the evidence and assessing credibility are primarily for the trier of fact." (Citations omitted.) *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994).

{¶12} Here, Mr. Clark maintains that the testimony of the witnesses was inconsistent, and that his testimony, along with that of his sons, established that he acted appropriately under the circumstances.

{¶13} In regard to parental discipline, the Ohio Supreme Court has held that R.C. 2919.25(A) does not preclude a parent from disciplining his child, but does prohibit a parent from causing "'physical harm' as that term is defined in [former] R.C. 2901.01(C)." *Suchomski*,

58 Ohio St.3d at 75. "'Physical harm' is defined as 'any injury[.]'" *Id.*, quoting former R.C. 2901.01(C), now R.C. 2901.01(A)(3) ("'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."). An injury is "the invasion of any *legally protected interest of another*." (Emphasis sic.) (Quotation and citation omitted.) *Suchomski* at 75. "A child does not have any legally protected interest which is invaded by proper and reasonable parental discipline." *Id.*

{¶14} Here, as set forth in our discussion of the sufficiency of the evidence, A.C. testified that her father hit her while they were in the car, and then pulled her hair with great force as she was running away from him. On cross-examination, A.C. maintained that she was not leaning over the center console or yelling in her father's face when he hit her in the chest. However, A.C. acknowledged that she does not like her father.

{¶15} Along with the testimony of A.C., the State presented the testimony of Officer Grabowski and three individuals who were in the park during the incident: Sarah Davis, Stacy Marlar, and Heidi Wise. Officer Grabowski testified that on the date at issue he was dispatched to Freedlander Park. When he arrived he spoke with A.C. and witnesses to the altercation. Based upon the statements made by those individuals along with a visible mark on A.C.'s chest, which she claimed was the result of being struck by Mr. Clark, Officer Grabowski arrested Mr. Clark for domestic violence. Officer Grabowski identified a picture of A.C. showing the area of her chest where she claimed her father had struck her, which was admitted into evidence. Officer Grabowski maintained that, based upon his experience, the mark on A.C.'s chest was consistent with being struck. The picture displays redness on the area of A.C.'s upper chest.

{¶16} Ms. Davis testified that she was at the park on the date at issue and heard a girl yell. She turned to see a frantic girl running in her direction, yelling for help. A man then came

up behind the girl, and pulled her down by her hair. After she and others intervened, Ms. Davis called the police.

{¶17} Ms. Marlar testified that she was at the park on the day at issue and witnessed a man punch a girl in the neck/chest area with a closed hand and then pull her by her hair. She opined that the man used much more force than was necessary, and the girl was crying and screaming. During the altercation, Ms. Marlar saw two boys trying to separate the man and girl. On cross-examination, Ms. Marlar maintained that the man and girl were facing each other when the man punched her. The girl then turned away, and the man pulled her by the hair toward him, but did not pull her to the ground.

{¶18} Ms. Wise testified that she was at the park with her family on the date at issue, and she heard a "shrill scream." After walking halfway across the parking lot, she saw a man "pull a woman's hair so hard" that she thought he had either "broken * * * or hyper-extended" the woman's neck. Ms. Wise informed lifeguards at the park's pool that they needed to call 9-1-1. Ms. Wise found the amount of force used by the man to be "astounding," and would not categorize the man's action toward the woman as "discipline" but instead it appeared to be "a beating." On cross-examination, Ms. Wise stated that she did not see A.C. on the ground at all during the altercation, and she was not sure if Mr. Clark had hit her, but she had seen his hand go up by her neck area. Ms. Wise verified that two boys were yelling at them to stop.

{¶19} The defense provided the testimony of Mr. Clark and his two sons who were present during the incident. Mr. Clark testified that, after he picked up A.C., she was screaming at him regarding issues pertaining to coming to live with him or going into foster care. She was leaning over the center console, yelling, "What you gonna do, what you gonna do," at him, while her hands were in the air. He took her to the park to talk. She was still leaned over the center

console when he went to park his car, and he pushed her back in her seat. His push was somewhat forceful because she was a larger girl. Thereafter, she said he would be in trouble for hitting her, and she took off out of the car and started running up a hill. He chased after her, and his sons followed them. Mr. Clark got in front of A.C. on a sidewalk, and she "smacked" into him, causing him to fall to the ground and roll three times. Afterward, he got back up, and called his fiancé to see if she could calm A.C. down. He then went over to A.C. and grabbed her by her hair clip to get control of her, and he said they were going back to her grandmother's, and he pointed to the car. At that point, lifeguards came over to them and took A.C. with them to another area. Mr. Clark maintained that he was not trying to hurt A.C. He loves his daughter and believed that he used proper means of dealing with the situation. On cross-examination, Mr. Clark maintained that he did not make a statement to police officers.

{¶20} Mr. Clark's fourteen-year-old son testified that, on the date at issue, A.C. was sitting in the front seat when their father was driving them to the park. She was leaning over the center console, screaming in her father's face to hit her. When they got to the park, A.C. was still yelling at Mr. Clark, and he took his hand and pushed her back into her seat and told her to calm down, but he did not push her hard. Mr. Clark's sons then got out of the car, and A.C. got out and started running up a hill, crying and screaming for help. His father ran after her, and the sons followed. When their father caught up with A.C., he pulled her hair clip and pointed to the car, saying they were going back to A.C.'s grandmother's house. She refused, and then went onto the playground and screamed for help. A.C.'s brother believed she was overreacting and acting "unruly" during the incident. On cross-examination, A.C.'s brother acknowledged that he lives with his father and had spoken with his father once or twice about the incident, but he had not spoken with his sister or grandmother since the day following the incident, which was about

five months prior to the trial. However, on redirect examination, he confirmed that his testimony reflected what he saw and heard on the date at issue, and no one told him what to say during his testimony.

{¶21} A.C.'s twelve-year-old brother also testified as to the incident. He maintained that, on the date at issue, he was sitting in the back seat of the car with his brother, after his father picked up A.C. to go to Freedlander's Park. On the way to the park, A.C. was leaning over the center console yelling at her father, about two inches from his face, saying "What are you going to do? You can't do nothing to me. Hit me, hit me." When they got to the park, Mr. Clark could not put the car into park, and he pushed A.C. back in her seat so that he could put the car into park. When they got out of the car, A.C. started running, and her father and brothers followed her. The younger brother saw A.C. run over their father, and their father tried to grab A.C.'s hair clip. The younger brother believed his sister was acting "unruly" that day. On cross-examination, the younger brother acknowledged that he had spoken with his father about the incident, and he had not spoken with A.C. or his grandmother since the incident. He further acknowledged that he was scared that his father was going to go to jail.

{¶22} The State called Officer Brandon Heim as a rebuttal witness. Officer Heim testified that he responded to the call at the park. Mr. Clark had given him a statement after the incident, in which he said that his daughter's mouth was "just going" and he demonstrated to the officer that he hit her with the back of his hand on her shoulder, and he told her to knock it off. The officer maintained that Mr. Clark stated that, at some point, A.C. got out of the car and ran off in the park. Mr. Clark chased after her, fell to the ground, got back up and continued chasing her until he grabbed her by the hair to catch her. The officer maintained that Mr. Clark never had told him that A.C. had run him over; instead, he indicated that he fell while chasing her.

**{¶23}** Mr. Clark maintains that his conviction was against the weight of the evidence because the testimony of the witnesses at the park was inconsistent with A.C.'s testimony and because Mr. Clark and his sons all testified that the Mr. Clark took necessary measures in the car to safely put A.C. back in her seat.

**{¶24}** Although there were discrepancies in the testimony of the witnesses "the jury is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). This is because the jury "is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30 quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993). Based upon the testimony elicited at trial, we cannot say the jury's resolution of the testimonial inconsistencies was unreasonable. *See State v. Peasley*, 9th Dist. Summit No. 25062, 2010-Ohio-4333, ¶ 18, citing *State v. Morgan*, 9th Dist. Summit No. 22848, 2006-Ohio-3921, ¶ 35 ("A conviction is not against the manifest weight because the [trier of fact] chose to credit the State's version of events.").

**{¶25}** Further, A.C. testified that she was not leaning over the center console in the car, and thus her father did not push her back in the seat, but instead struck her. Also, on appeal, Mr. Clark disregards the evidence of the hair pull, which A.C. testified as the worst pain she had ever experienced. *See State v. Felder*, 9th Dist. Lorain No. 91CA005230, 1992 WL 181016, *1 (July 29, 1992) (The jury "has the right to place considerable weight on the testimony of the victim."). Ms. Davis, Ms. Marlar, and Ms. Wise all witnessed the hair pull, which they believed was

excessive. Ms. Wise expressed the severity of the hair pull by concluding that it amounted to a "beating" and that Mr. Clark had either broken or hyperextended A.C.'s neck.

{¶26} After reviewing the entire record, weighing the inferences, and examining the credibility of witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in determining that Mr. Clark knowingly caused physical harm to A.C. and that his actions did not constitute reasonable and proper parental discipline.

{¶27} Accordingly, Mr. Clark's sole assignment of error is overruled.

III.

{¶28} Mr. Clark's assignment of error is overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

JENNIFER A. ROBERTS, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and OLIVIA A. BOYER, Assistant Prosecuting Attorney, for Appellee.