[Cite as *State v. Heater*, 2018-Ohio-4250.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 17AP0035 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| WILLIAM C. HEATER | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. 2017-TR-D 007402 |

DECISION AND JOURNAL ENTRY

Dated: October 22, 2018

TEODOSIO, Judge.

{¶1} Defendant-Appellant, William Heater, appeals from his conviction in the Wayne County Municipal Court. This Court affirms.

I.

{¶2} One July afternoon, Trooper Jeremy Parks was observing traffic traveling eastbound on U.S. 30. The traffic conditions were light to moderate when he saw a car speeding toward him and clocked it at 98 miles per hour. The car was traveling in the left lane, but, as it approached the trooper, it slowed and moved to the right lane. Once it passed, Trooper Parks executed a traffic stop.

{¶3} Mr. Heater was the driver of the car that Trooper Parks stopped. When the trooper approached him, Mr. Heater indicated that he had been speeding because a red van had been relentlessly tailgating him. He claimed that the van kept matching his speed, regardless of whether he sped up or slowed down, so he was trying to elude it. After Trooper Parks returned

to his cruiser, completed a citation, and went to hand it to Mr. Heater, Mr. Heater then claimed that the van driver had pointed at him and, possibly, had been holding a gun when he did so.

{¶4} Mr. Heater pleaded not guilty to speeding and, at a bench trial, raised the affirmative defense of sudden emergency. After hearing all of the evidence, the court rejected his defense and found him guilty. The court also found that Mr. Heater had engaged in reckless operation. Accordingly, in addition to fining him for his speeding violation, the court sentenced him to a six-month license suspension and assessed two points against his license.

{¶5} Mr. Heater now appeals from his conviction and raises two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR ONE**

THE TRIAL COURT ERRED BY FINDING THAT THE DEFENSE OF SUDDEN EMERGENCY DID NOT EXCULPATE THE DEFENDANT FROM THE SPEEDING VIOLATION WITH WHICH HE WAS CITED AS THAT DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶6} In his first assignment of error, Mr. Heater argues that his conviction is against the manifest weight of the evidence. Specifically, he argues that the court lost its way when it rejected his sudden emergency defense. We disagree.

{¶7} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a

'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.  This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶8}   The affirmative defense of sudden emergency will excuse a motorist's violation of a traffic law if it occurs due to "a sudden and unexpected occurrence or condition * * *." *Zehe v. Falkner*, 26 Ohio St.2d 258 (1971), paragraph two of the syllabus.  Yet, "[not] every unexpected occurrence * * * constitute[s] a sudden emergency."  *Oechsle v. Hart*, 12 Ohio St.2d 29, 34 (1967).  The motorist must "show that something over which [he] had no control, or an emergency not of [his] own making, made it impossible to comply with the [traffic law]."  *State v. Davis*, 4th Dist. Pickaway No. 04CA1, 2004-Ohio-5680, ¶ 15.

> "For example, a driver proceeding lawfully in [his] lane of travel, suddenly struck by a motorist that ignored a stop sign, and as a result of the collision forced to veer or travel to the left of the center line should not be held to have violated the driving left of center statute."

*State v. Gabriel*, 9th Dist. Medina No. 14CA0005-M, 2014-Ohio-5387, ¶ 18, quoting *Davis* at ¶ 15.  The sudden emergency defense "does not comprehend a static condition which last[s] over a period of time."  *Miller v. McAllister*, 169 Ohio St. 487 (1959), paragraph six of the syllabus.  Likewise, "[a] self-created emergency, one arising from his own conduct or from circumstances under his control, cannot serve as an excuse."  *Zehe* at paragraph three of the syllabus.  *Accord Grange Mut. Cas. Co. v. Biehl*, 9th Dist. Summit No. 18304, 1998 Ohio App. LEXIS 892, *8 (Mar. 11, 1998).

{¶9}   Trooper Jeremy Parks testified that he was watching eastbound traffic on U.S. 30 from a stationary position when he first observed Mr. Heater's car.  He stated that traffic

conditions were light to moderate that day, and he first saw Mr. Heater from a distance of approximately 1,200 to 1,300 feet. He visually estimated that Mr. Heater was traveling at 100 miles per hour and used his laser to confirm that his actual speed was 98 miles per hour in the 70 mile per hour zone. Mr. Heater was initially traveling in the left lane, but slowed and moved to the right lane as he approached. He then passed Trooper Parks, and the trooper executed his stop.

{¶10} Trooper Parks testified that he spoke with Mr. Heater twice; once when he first stopped him and once when he returned to Mr. Heater's car to issue him a citation. The first time they spoke, Mr. Heater said he was speeding because a red van was tailgating him. He claimed that he had tried increasing and decreasing his speed, but the van had simply matched his speed each time. Mr. Heater informed Trooper Parks that his chest hurt, it had been hurting all day, and he had been speeding to try to evade the van. Trooper Parks testified that

> [a]t that point [he] told [Mr. Heater] * * * the best thing to do in one of [those] scenarios is just to slow down or if you have to hit the shoulder, you know, to stop to let that vehicle go by, you know, that would be the safest thing to do [rather] than almost travel a hundred miles per hour to get away from him.

According to Trooper Parks, Mr. Heater never told him that he had, in fact, pulled to the side of the road to allow the van to pass. After Mr. Heater declined medical attention for his chest pain, Trooper Parks returned to his cruiser to complete Mr. Heater's citation.

{¶11} When Trooper Parks returned to hand Mr. Heater his citation, Mr. Heater then told him that the van driver had pointed something at him and he "didn't know if it was his hand or a gun * * *." Trooper Parks confirmed that, on his initial approach, Mr. Heater never mentioned the van driver engaging him in that fashion. Further, Trooper Parks testified that he never personally witnessed any aggressive driving between Mr. Heater and the red van as he watched Mr. Heater's car approach from an initial distance of 1,200 to 1,300 feet. The trooper

recalled that he saw a red van behind Mr. Heater's car, but testified that it was several car lengths away. He indicated that he was able to pull out from his stationary position, stop Mr. Heater's car, and place his cruiser in park before the red van passed his cruiser.

{¶12} Mr. Heater testified that he was driving home from work and traveling in the right lane when a red van began tailgating him. He stated that he waited for the van to pass, but it did not. Reasoning that the van driver wanted him to move over, Mr. Heater then changed lanes. He testified that the van driver also moved over, however, so he returned to the right lane. According to Mr. Heater, the van driver then accelerated to pull even, made some kind of hand gesture, and crossed slightly into Mr. Heater's lane of travel. Mr. Heater indicated that he could not see the driver's face because the van's windows were tinted. He claimed that he became concerned, however, because he had received a death threat from his ex-wife's son two weeks earlier and did not know what kind of vehicle the son drove. According to Mr. Heater, he slowed and pulled to the side of the road to call 911, but his cell phone was dead. He testified that, when he looked up from his phone, he saw that the van had stopped behind him. He then "took off" and attempted to speed away from the van. About one mile later, he noticed the van was slowing and saw Trooper Parks' cruiser.

{¶13} Mr. Heater conceded that, when Trooper Parks initially approached his car, he did not tell him that the van driver had made a hand gesture or that the driver had followed him when he had pulled to the side of the road. According to Mr. Heater, he failed to inform the trooper of those details because he was in shock. He testified that he was experiencing chest pains and, after the trooper released him, he received treatment for an anxiety attack.

{¶14} Mr. Heater argues that the trial court lost its way when it failed to conclude that a sudden emergency justified his otherwise unlawful conduct. He asserts that he was forced to

speed due to circumstances beyond his control (i.e., the conduct of the van driver), so the court ought to have excused his speeding violation. He contends that his testimony about the van driver was uncontroverted and showed that he acted the way any reasonable person would have in that situation. Thus, he argues that his speeding conviction is against the manifest weight of the evidence.

{¶15} This Court will assume for purposes of its analysis that a motorist, faced with the situation Mr. Heater described, could avail himself of the sudden emergency defense. *But see Miller*, 169 Ohio St. 487 at paragraph six of the syllabus and *Zehe*, 26 Ohio St.2d 258 at paragraph three of the syllabus (sudden emergency defense does not apply to static conditions or in circumstances under one's own control). Even so, this Court cannot conclude that the trial court clearly lost its way when it rejected Mr. Heater's affirmative defense. *See Otten*, 33 Ohio App.3d at 340. The trial court specifically noted that it did not find Mr. Heater's version of the events to be entirely credible. That is because Mr. Heater did not attempt to stop for help when he saw Trooper Parks' cruiser and he failed to tell the trooper important details when he initially spoke with him (e.g., that the van driver followed him to the side of the road and might have pointed a gun at him). Trooper Parks also never observed any aggressive driving between the two vehicles. Though Mr. Heater was the only one to testify about the moments preceding the trooper's involvement, the trial court was not required to accept his testimony. "This Court has repeatedly held that the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. The trial court, observing Mr. Heater and listening to his testimony, was free to reject it in whole or part. *See State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24. The record reflects that this is not the exceptional case in

which the evidence weighs heavily against Mr. Heater's conviction. *See Otten* at 340. Consequently, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING THAT THE DEFENDANT'S ACTIONS WERE RECKLESS AND IMPOSING A LICENSE SUSPENSION UPON HIM.

{¶16} In his second assignment of error, Mr. Heater argues that the trial court abused its discretion when it found that he engaged in reckless operation, and thus, suspended his driver's license. We disagree.

{¶17} "[I]n addition to or independent of all other penalties provided by law," a trial court may suspend a driver's license if he commits a motor vehicle violation "relating to reckless operation." R.C. 4510.15. Speeding is one type of violation for which a court may impose a license suspension. *See Akron v. Willingham*, 166 Ohio St. 337, 338 (1957). "When deciding whether to suspend a driver's license * * *, a court considers all of the relevant evidence probative of whether the defendant's operation of a motor vehicle was reckless." *State v. Secrest*, 9th Dist. Wayne No. 04CA0023, 2004-Ohio-4585, ¶ 7.

> "That a driver's operation of a motor vehicle was reckless is a conclusion reached by examining both the driving in issue and all the circumstances under which it took place. Foremost among these circumstances is the threat this manner of operation poses to others."

(Emphasis deleted.) *Akron v. Cripple*, 9th Dist. Summit No. 21385, 2003-Ohio-3920, ¶ 23, quoting *State v. Hartman*, 41 Ohio App.3d 142, 144 (12th Dist.1987), fn. 3. "A person acts recklessly when, with heedless indifference to the consequences, [he] disregards a substantial and unjustifiable risk that [his] conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). In finding that the circumstances warrant a license suspension, "the court need not make any special finding of recklessness." *Secrest* at ¶ 7.

{¶18} This Court applies an abuse of discretion standard when reviewing a trial court's decision to suspend a driver's license. *Cripple* at ¶ 22. An abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶19} The trial court determined that Mr. Heater engaged in reckless operation when he drove his car at an extremely high rate of speed and repeatedly changed lanes while other cars were present. Mr. Heater argues that the court abused its discretion in reaching that conclusion because there was no evidence that there were other cars on the road apart from his own car and the red van. He further argues that it was unreasonable for the court to suspend his license because he acted the way that any reasonable person would have in the foregoing scenario.

{¶20} Having reviewed the record, we cannot conclude that the trial court abused its discretion when it decided to suspend Mr. Heater's license. *See Cripple* at ¶ 22. Trooper Parks specifically testified that traffic conditions were light to moderate when he observed Mr. Heater and executed his traffic stop. Additionally, on the citation he issued Mr. Heater, he marked that the traffic flow was moderate. The trial court heard evidence that Mr. Heater was traveling at 98 miles per hour in the middle of the afternoon, changing lanes of travel as he progressed. As such, it reasonably could have concluded that he posed a threat to those around him, *see id.* at ¶ 23, and acted with heedless indifference to those consequences. *See* R.C. 2901.22(C). This Court rejects Mr. Heater's argument to the contrary. His second assignment of error is overruled.

III.

**{¶21}** Mr. Heater's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

STEVE C. BAILEY, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.