[Cite as *State v. Cherry*, 2019-Ohio-208.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28899 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| GEORGE D. LANGFORD, aka CHERRY | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2017-07-2459 |

DECISION AND JOURNAL ENTRY

Dated: January 23, 2019

SCHAFER, Presiding Judge.

**{¶1}** Defendant-Appellant, George Cherry, aka George Langford ("Cherry") appeals his convictions in the Summit County Court of Common Pleas. We affirm.

I.

**{¶2}** Officers Natalie Tassone and David Rouse of the Akron Police Department were patrolling a known drug area where they observed a U-Haul backed into a property that was known for drug related complaints. At that time the officers knew the U-Haul was not normally at the location and that owner of the property had moved to another address and was not on scene. The officers then moved their cruiser to another street to wait and see if the U-Haul would exit the property. The officers later observed the U-Haul pull out and turn from a side street onto the street where they were waiting without using a turn signal. At that point the officers initiated a traffic stop. The U-Haul then pulled into a parking lot.

{¶3} When the U-Haul stopped, the passenger exited the vehicle and ran into the woods. Officer Tassone followed the passenger into the wooded area and, although she ordered him to stop, he continued to run. Officer Tassone lost sight of the man, but continued to search the wooded area. Officer Tassone later heard on her radio that Officer Rouse had apprehended the man she was chasing.

{¶4} As Officer Tassone was chasing the passenger, Officer Rouse approached the driver's side door of the U-Haul to speak to the driver. However, the vehicle then peeled its tires, made a left through the parking lot and into a construction zone. Officer Rouse then observed the driver exit the U-Haul, run across the street, and begin to climb a fence. When he realized he would not be able to catch the driver, Officer Rouse called the driver's location out on the radio and returned to the U-Haul. Officer Rouse later heard over the radio that the passenger was running nearby and thereafter apprehended the man.

{¶5} Officer Rouse later learned that Officer Morris of the Akron Police Department had apprehended the driver. The driver was identified as Cherry. The Summit County Grand Jury subsequently indicted Cherry on one count of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B), a felony of the third degree; one count of obstructing official business in violation of R.C. 2921.31(A), a misdemeanor of the second degree; and one count of stopping after an accident/hit skip in violation of R.C. 4549.03, a misdemeanor of the first degree.

{¶6} At trial, Officers Tassone, Rouse, and Morris testified on behalf of the State. At the close of the State's case-in-chief, Cherry made a Crim.R. 29 motion for judgment of acquittal, which the trial court denied. The defense then rested without calling any witnesses.

The defense renewed its Crim.R. 29 motion after closing arguments. The trial court noted the renewal and summarily overruled the motion.

{¶7} After deliberation, the jury found Cherry guilty of all three charges in the indictment. The trial court subsequently sentenced Cherry according to law.

{¶8} Cherry filed this timely appeal raising two assignments of error for our review. As the assignments of error raise similar issues, we elect to consider them together.

II.

### Assignment of Error I

**[Cherry]'s conviction is unconstitutional as it is against the manifest weight of the evidence an[d] is based on insufficient evidence in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Sections Ten and Sixteen of the Ohio Constitution.**

### Assignment of Error II

**The trial court erred when it denied [Cherry]'s motion for acquittal.**

{¶9} In his first assignment of error, Cherry contends is convictions are based on insufficient evidence and against the manifest weight of the evidence. In his second assignment of error, Cherry contends that the trial court erred when it denied his Crim.R. 29 motion for acquittal. We disagree.

{¶10} "'We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Smith*, 9th Dist. Summit No. 27389, 2015-Ohio-2842, ¶ 17, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a

reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775 , ¶ 33.

**{¶11}** This matter implicates Cherry's convictions for failure to comply with the order or signal of a police officer, obstructing official business, and stopping after an accident/hit skip. However, on appeal, Cherry does not dispute any of the underlying elements of these offenses. Instead, Cherry contends that the State failed to meet its burden of production solely with respect to the issue of identity. Accordingly, we will limit our analysis to that issue.

**{¶12}** "[I]dentity of the perpetrator is an essential element that must be proved beyond a reasonable doubt." *State v. Johnson*, 9th Dist. Lorain No. 13CA010496, 2015-Ohio-1689, ¶ 13. "As with any other element, * * * identity may be proved by direct or circumstantial evidence, which do not differ with respect to probative value." *State v. Taylor*, 9th Dist. Summit No. 27273, 2015-Ohio-403, ¶ 9.

**{¶13}** Officer Rouse testified at trial that he is a patrol officer and was on duty with his partner, Officer Tassone, on July 11, 2017. He stated his shift that day was 2:30 p.m. to 11:00 p.m. and that he was in full uniform and driving a police cruiser. Officer Rouse testified that he and Officer Tassone were focused on the area around Laird Street on that day due to recent issues. He stated that they were focused on a specific house located on Berkley due to numerous overdoses, burglary calls, and information that there were active drug deals taking place at that

location. Officer Rouse stated that when they drove by the house they observed a U-Haul parked behind the home. Officer Rouse stated that they found the presence of the U-Haul odd because the only vehicle they expected at the property was gold Grand Am. Consequently, Officer Rouse decided to run the license plates numbers (one license plate was found over top of another license plate) to determine if the vehicle was stolen since he regularly responded to reports of stolen U-Hauls. The licenses plates did not report as stolen.

{¶14} Officer Rouse then testified that he and Officer Tassone decided that they would wait, call permitting, at a location on East Market Street where they could observe both Willard Street and Fulton Street, which were the only entrances to the area, to see if the U-Haul would leave the location. The officers subsequently observed the U-Haul turn from Fulton Street onto East Market Street without using a turn signal. Officer Rouse stated he performed a U-turn in his cruiser in order to initiate a traffic stop. The U-Haul turned south on Arlington Street and abruptly turned into a parking lot when Officer Rouse activated the cruiser's lights and siren. The U-Haul stopped suddenly and Officer Rouse observed the passenger door open and a male passenger run from the vehicle.

{¶15} Officer Rouse testified that at that moment both he and Officer Tassone exited the cruiser. As Officer Tassone began running after the passenger, Officer Rouse stated he approached the driver's door because it had not opened. However, before Officer Rouse was able to get to the door, the wheels on the U-Haul peeled and then the vehicle continued at a high rate of speed through the congested parking lot. Officer Rouse stated he did not get a look at the driver of the U-Haul at that time.

{¶16} Officer Rouse testified that he then ran back to his cruiser so he could pursue the U-Haul. He then observed the U-Haul enter an active construction zone on East Exchange

Street. He stated that the U-Haul continued west in the construction zone until it rear-ended a construction truck and could go no further. Officer Rouse testified that by the time he was able to negotiate his cruiser through the construction zone, the driver of the U-Haul was already out of the vehicle and Officer Rouse watched the driver run from the driver's side of the vehicle across East Exchange Street. Officer Rouse stated that by the time he got out of the cruiser, the driver was climbing over a fence. He then observed the driver "stop, look back over his shoulder at [Officer Rouse], and then he continued." Officer Rouse stated he got a good look at the driver and "was able to see his clothing description, [and] got a good look at his face because he turned and looked directly at [him]." Officer Rouse then proceeded to identify Cherry as the driver of the U-Haul.

{¶17} At that point Officer Rouse determined that he would not be able to catch the driver on foot and called out on his radio "to let other cars know the area that he was going to be in[.]" Officer Rouse later learned that Cherry was subsequently apprehended by Officer Morris who ultimately "handed off" Cherry to Officer Harrison. Officer Rouse stated that Officer Harrison then drove Cherry to Officer Rouse's location so that Officer Rouse could positively identify him as the driver of the U-Haul, which he did. Officer Rouse stated he was able to positively identify Cherry based his face "[f]rom when [Cherry] was climbing over that first fence when [Officer Rouse] was still at the U-Haul and he turned back and locked eyes with [Officer Rouse]." Officer Rouse stated the most prominent part of Cherry's face for identification purposes was his facial hair.

{¶18} Viewing this evidence in a light most favorable to the State, we determine that any rational trier of fact could have found beyond a reasonable doubt that Cherry was the individual who committed the offenses charged in this matter.

{¶19} Turning now to his manifest weight argument, Cherry contends that his convictions are against the manifest weight of the evidence since: (1) "Officer Rouse's testimony was riddled with inconsistencies;" (2) although Officer Rouse stated he got a good a look at Cherry, he testified he was a quarter of a block away when Cherry climbed the fence; (3) Officer Rouse's original identification of Cherry estimated his height at five foot eight inches tall, yet Cherry is six foot one inch tall; (4) Officer Rouse's original identification of Cherry stated he was wearing a black shirt and black shorts, but when Cherry was arrested he was wearing a black shirt and camouflage shorts; (5) although Officer Rouse stated Cherry's most predominate facial feature was his facial hair, Officer Rouse did not include that in the description he radioed to other officers; (6) the State did not offer any evidence connecting Cherry to the U-Haul; and finally, Officer Rouse's identification of Cherry was made through the window of a police cruiser, where he was unable to see the lower part of Cherry's body.

{¶20} A sufficiency challenge is legally distinct from a manifest weight challenge. *Thompkins*, 78 Ohio St.3d at 387. A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *Id.* When applying the manifest weight standard, we are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "Weight of the evidence concerns 'the inclination of *the greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins* at 387, quoting Black's Law Dictionary 1594 (6th Ed.1990). Courts are cautioned to only reverse a conviction on

manifest weight grounds "in exceptional cases," *State v. Carson,* 9th Dist. Summit No. 26900, 2013–Ohio–5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

**{¶21}** First, although Cherry states Officer Rouse's testimony is "riddled with inconsistencies," Cherry does not point to any inconsistencies in the officer's testimony. Instead, Cherry points to several inconsistencies between Officer Rouse's testimony and his original description of the driver of the U-Haul called out over the radio to fellow officers. Officer Rouse testified that the description he called out over his radio described the driver of the U-Haul as being five foot seven inches tall to five foot eight inches tall and wearing a black shirt and black shorts. However, Officer Rouse also testified that his height description was an estimate made at a lower position about a quarter block while Cherry was running and then cresting a fence. Regarding the description of Cherry's shorts as black, Officer Rouse testified that although they were in fact camouflage, they were "urban Camo, which is a mixture of black, gray and white" that appears dark at a distance. Officer Rouse also stated that his positive identification of Cherry was based entirely on his face and that he was "a hundred percent sure" that the driver of the U-Haul was the man sitting in the courtroom and identified as Cherry.

**{¶22}** A review of the transcript shows that these alleged inconsistencies were brought to the attention of the jury through cross-examination. Similarly, the lack forensic evidence or other corroborating evidence was also brought to the attention of the jury. "This Court has repeatedly held that the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. "'[T]he jury is free to believe all, part, or none of the testimony of each witness.'" *State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24,

quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. Moreover, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chooses to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16.

{¶23} After a review of the evidence, we cannot say that the jury lost its way and created a miscarriage of justice when it convicted Cherry of the charges in this case. Accordingly, Cherry's convictions are not against the manifest weight of the evidence.

{¶24} Therefore, Cherry's assignments of error are overruled.

III.

{¶25} Cherry's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

ADAM VANHO and ILDIKO A. SZUCS, Attorneys at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.