[Cite as *State v. Horn-Epling*, 2020-Ohio-1478.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | C.A. No. 29412 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MICHAEL P. HORN-EPLING | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 18 06 1889 |

DECISION AND JOURNAL ENTRY

Dated: April 15, 2020

TEODOSIO, Judge.

{¶1}   Appellant, Michael P. Horn-Epling, appeals from his domestic violence conviction in the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}   Mr. Horn-Epling and his live-in girlfriend ("T.M.") engaged in an argument one night, which turned physical and resulted in T.M. suffering several different injuries.  Their accounts of what happened that night differ greatly, however, as T.M. alleged Mr. Horn-Epling threw her into a bedroom dresser, while Mr. Horn-Epling alleged T.M. was pulling on his arm to stop him from leaving when she fell into the dresser herself.

{¶3}   Mr. Horn-Epling was indicted on one count of domestic violence, a felony of the third degree, and one count of domestic violence menacing, a misdemeanor of the first degree.  Following a jury trial, he was found guilty of domestic violence, but not guilty of domestic violence menacing.  The trial court sentenced him to three years in prison.

{¶4} Mr. Horn-Epling now appeals from his conviction and raises one assignment of error for this Court's review.

II.

## ASSIGNMENT OF ERROR

APPELLANT MICHAEL P. HORN-EPLING'S CONVICTION FOR DOMESTIC VIOLENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶5} In his sole assignment of error, Mr. Horn-Epling argues that his conviction was against the manifest weight of the evidence. We disagree.

{¶1} A challenge to the manifest weight of the evidence concerns the State's burden of persuasion. *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring). When reviewing a manifest weight challenge,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶2} Mr. Horn-Epling was convicted of domestic violence under R.C. 2919.25(A), which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Because Mr. Horn-Epling had previously been convicted of two other domestic violence offenses, the offense in this matter was enhanced to a felony of the third degree. *See* R.C. 2919.25(D)(4). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Physical harm to persons" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A "family or household member" includes a person living as a spouse who has resided with the offender. R.C. 2919.25(F)(1)(a)(i). A "person living as a spouse" includes a person who is either cohabiting with the offender or has cohabited with him within five years prior to the date of the alleged commission of the act in question. R.C. 2919.25(F)(2).

{¶3} T.M. testified that on May 17, 2018, her live-in boyfriend, Mr. Horn-Epling, was angry with her because she had to work late the following night. According to T.M., a few minutes after she turned off her light to go to sleep, Mr. Horn-Epling got up and began accusing her of cheating on him with her boss. He called her a liar, a cheater, a whore, a c**t, a bitch, fat, ugly, and other "very nasty, mean things" while yelling and screaming at her for 20-30 minutes. T.M. plugged her ears and prayed or hummed to try to drown him out, which is what she would typically do when Mr. Horn-Epling had these "episodes."

{¶4} T.M. testified that she had worked or trained in law enforcement years ago, and still knew several Barberton officers. During the argument, Mr. Horn-Epling told her, "The next time you call your cop buddies, make sure they bring backup[,]" which T.M. understood as a threat. She replied, "Why, so they can shoot you like they shot your brother?" T.M. testified that this

comment "literally enraged" Mr. Horn-Epling, and "[h]e grabbed [her] off the bed and threw [her] off the bed, and [she] fell into a dresser[,]" causing a "gash" on her backside which had to be bandaged as well as other injuries. Mr. Horn-Epling then stood above her, put his foot on her chest, and said, "I will f***ing kill you, bitch. Do you understand me? I will f***ing kill you." T.M. wanted him to stop, so she yielded and told him she understood.

{¶5} Mr. Horn-Epling recalled the events of that night unfolding differently. He testified that he had an argument with T.M. over her working that weekend and "[i]t escalated and was just a downward spiral." According to Mr. Horn-Epling, T.M. was drinking and in "one of her moods" all day, "call[ing] [him] words and all this other stuff[,]" which he ignored. At bedtime, T.M. "continued to run her mouth" harassing him, calling him an a**hole and a piece of s**t, so he asked, "What are you going to do, call your cop buddies?" T.M. then kicked Mr. Horn-Epling and said, "Yeah, I'm going to call them. They can shoot you in the head like they did your brother[,]" which Mr. Horn-Epling testified hurt him and "pissed [him] off." He attempted to leave the bedroom and go sleep on the couch, but T.M. grabbed his arm while trying to tell him she was sorry. He tried pulling away from her, but she held on and pulled harder. T.M. then fell up against the dresser and Mr. Horn-Epling fell out of the room into the hallway.

{¶6} When asked about T.M.'s testimony differing from his own, Mr. Horn-Epling denied her story "a hundred percent." He testified:

> I love [T.M.] to death. She is a 180-pound woman. How could I literally have picked her up over my head and slammed her down? If she was on the left side of the bed, if that was even possible - - we'll just even say it was possible. Wouldn't the injury from the dresser being here probably have been on the left side of her if that was the case, and multiple injuries on her back and things of that nature? Not even possible; not even possible.

{¶7} In challenging the manifest weight of the evidence on appeal, Mr. Horn-Epling attacks T.M.'s credibility, asserting that his own version of events was more plausible than her

version. He directs us to his own testimony, in which he characterized her testimony that he picked her up off of the bed and threw her against the dresser as impossible. Then, in grandiose fashion, he describes the act of picking up a 180-pound woman with one's arms only and throwing her against a dresser as "a Herculean task, indeed impossible for a mere mortal."

{¶8} The jury was presented with conflicting stories at trial as to what actually occurred between Mr. Horn-Epling and T.M. on the night of May 17, 2018. Despite Mr. Horn-Epling's personal belief that his testimony "clearly prevails" over T.M.'s testimony in terms of plausibility, "'the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts.'" *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "'[T]he jury is free to believe all, part, or none of the testimony of each witness.'" *State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. Accordingly, we cannot say that the jury erred in choosing to believe T.M.'s version of the events over Mr. Horn-Epling's, as the jury was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *See State v. Taylor*, 9th Dist. Summit No. 29058, 2019-Ohio-3253, ¶ 15. "This Court has consistently held that '[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version.'" *Id.*, quoting *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13.

{¶9} In reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot say that the jury, in resolving any conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice. *See Otten* at

340. Mr. Horn-Epling has also not demonstrated how this is an exceptional case where the evidence presented weighs heavily in his favor and against conviction. *See Thompkins* at 387.

{¶10} Mr. Horn-Epling's sole assignment of error is overruled.

### III.

{¶11} Mr. Horn-Epling's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

NICHOLAS SWYRYDENKO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.